## JOHN G. HAMM v. NANNIE GUNN.

### Decided June 20, 1908.

**1.—Nuisance—Abatement.**

The right to abate nuisances is a well established doctrine of courts of equity, and it is a maxim of law that the owner of property must so use it as not to materially injure another. But before a citizen should be permitted to abate as a nuisance a useful commercial business or enterprise he should be required to show that its operation was so conducted as to injure him in some material way or interfere with the comfortable use of his own property.

**2.—Same—Cotton Gin—Evidence.**

In an action to abate the operation of a cotton gin near plaintiff's residence in a town, because of the alleged noise and dust from the same, evidence considered, and held insufficient to support a verdict and judgment for the plaintiff.

Appeal from the District Court of Taylor County. Tried below before Hon. J. H. Calhoun.

*Harry Tom King, Theodore Mack* and *Hardwicke & Hardwicke,* for appellant.—If any state of facts will authorize a court of equity to issue a perpetual injunction against the operation of a cotton gin, it being a useful and necessary business, such authority should be sparingly used, and only in cases where the facts show that the character of the use to which the gin is put necessarily results in a nuisance, and that the effect of same shows a condition requiring the interposition of a court of equity, and, unless the testimony so shows, the trial court, when requested, should give a peremptory instruction. Dunn v. City of Austin, 77 Texas, 139; Rouse v. Martin, 75 Ala., 510; 51 Am. Rep., 463, cited with approval in 77 Texas, 139; Gulf, C. & S. F. Ry. v. Oakes, 94 Texas, 155; St. Louis, S. F. & T. Ry. v. Shaw, 92 S. W., 30.

"The law is well settled, on sound reasons, that the mere fact that the diminution of plaintiff's property, or the increased risk from hazard of fire, occasioned by a structure erected by defendant upon a lot adjoining complainant's premises, without more, is unavailing as a ground of equitable relief. This is one of the many risks and discomforts naturally incident to town or city life." Rouse v. Martin, 75 Ala., 510; 51 Am. Rep., 463; 2 Story, Eq. Jur., section 925; 1 High, Inj., section 788; Wood, Nuis., section 511.

*Wagstaff & Davidson,* for appellee.

CONNER, CHIEF JUSTICE.—This appeal is from a judgment perpetually restraining appellant from operating a gin on certain lots near appellee's residence, and the only question that we deem worthy of discussion is whether the evidence sufficiently supports the judgment.

The evidence shows that appellee's residence is situated in the northeast corner of block 23, and that for several years prior to the institution of the suit appellant had operated an electric light plant located in block 22, which is east of block 23; that appellant made what is designated in the evidence as a gin addition to the light plant. The light

plant extends north and south on one of the southern tiers of lots in block 22, and the gin was extended east from the south end of the light plant, forming an "L." No additional motive power was installed by reason of the gin addition, the gin being operated by the motive power of the light plant. Appellee has a small orchard and garden south of her house, and a street sixty to eighty feet wide extends between block 23 and block 22. Cotton to be ginned is taken from loaded wagons by means of a suction pipe on the south side of the gin. The nearest point of the gin to appellee's residence is about two hundred feet, lots 14 and 15 and said street intervening between the gin and appellee's premises.

T. C. Weir testified in behalf of appellee to the erection of the gin, and that he "did not see any difference between this gin and other gins. Sometimes there is very little dust in cotton, and sometimes there is a great deal; there is always some dust in cotton in this country; when cotton goes into the gin stand and saws it has dust in it; that is when the dust begins to fly; it has lint in it when it first reaches the saws, and then the lint begins to fly; dust goes out into the room and from there passes out through the windows and doors and through the flues; there are two flues to this gin; a few days ago I passed while they were ginning a bale of cotton and could plainly hear the noise—saw no difference in the running of this gin and other gins as to noise; there was lint and dust in the upper part of the flues, and I could see it—looked like fine dust passing out of the flues. There was just a little smoke; you could see it by looking at the smokestack; the smokestack is about forty-five feet high. I have never seen a gin that did not let lint escape from it. At the time I speak of there was some lint lodging on some screens of some kind there; did not examine to see how thick the screens were."

On cross-examination T. C. Weir again testified concerning the conditions usually following the operations of a gin, stating that he "did not testify as a gin expert at all; that when he was there and looked at the building they were ginning a bale of cotton; that he stopped a few minutes on the southwestern corner of the gin and from the sidewalk made his observation; that, while there, saw a little dust pass out of the ventilator at the top; that the ventilator was about forty-five feet high; it was concentrated at the two flues as it passed out at the top; that the dust I saw coming through had come from cotton then being ginned; I could see the dust with the naked eye; it comes out of the top of the house through a galvanized opening; I saw some lint on screens that had been put in around the top of the ventilator; did not see lint flying in the air; saw it catch on the screens which was catching the lint; I saw the dust pass off a little here and there and settle somewhere."

Appellee testified that "she was the head of a family, and owned and resided in the residence involved." In speaking of the operation of the gin she said: "I think the first bale was ginned last Saturday a week; I was at home at the time; I was at home another day while they were ginning, but do not remember the day of the week; on the Saturday I noticed the gin, and heard the noise, and saw the lint coming from the windows and passing around and flickering about the light plant, and dust; I did not notice the flues—did not know what the flues were for— did not look in the direction of the flues; dust was whipping around on the east side and coming through the windows; it came toward my house;

some of it got to my fence, or very near it; the wind was blowing more away from me than toward me; lint of considerable size came towards me, large enough that you could see it distinctly from my place to the gin; some of it fell in my yard, and I sent out and had it picked up to be confident it was lint cotton." Q. "Did you see the lint and dust in considerable quantities?" A. "No, sir; I can't say in considerable quantities, because it was the first day they had been ginning there; I think I was in the house when the bale was being ginned. I could hear the gin running; I could hear them all the time." Q. "Well, was the noise of the running of that gin, and the dust and lint—does that disturb you any?" A. "It does." Q. "What effect does it have on you?" A. "Just worries me in a nervous way; and as far as to the lint, I consider that the lint and dust are unhealthy." Q. "Is it there all the time, or practically all the time?" A. "Yes, sir, the noise is, and of course the lint is if they are ginning." Q. "When you are in the house can you hear that noise?" A. I can; it is a buzz there all the time; there is hallooing there at night."

On cross-examination she stated: Q. "Did you see dust?" A. "Yes, sir, I saw dust. Of course, in no great quantities; in all probability it would light before it got there. It would reach my premises if there was a strong breeze." Q. "And it might have gone over the house if there had been a very strong breeze?" A. "Yes, sir, of course. But any obstruction always stops anything like that. I did not say I saw great quantities of lint. I know some lint came over there. I watched it as it flew from the gin."

Appellant and Hugh Hunt, a gin expert, testified to the effect that the gin was a modern one, and so arranged and equipped that neither dust nor lint will escape therefrom, and that by means of a "muffler" the noise was in a great measure subdued. J. H. Oliver testified that he was at the gin when the first bale of cotton had been ginned, and walked around to observe conditions; that he saw no dust and saw no lint escape; that there was but little noise—less than generally about a gin. C. W. Williams testified that he was at the gin when the first and third bales were ginned, and that there was no lint or dust that he could tell flying, and that there was very little noise. M. Crowder testified that his shop is about one lot east of the gin, and that he had not noticed any dust from it; none had been blown into his shop. Charles Stephens and J. C. Holland, living about as far from the gin as appellee, testified that they could hear the gin machinery running, but neither testified that they could observe whether there was dust or lint projected. O'Brien testified: "The light plant is just across two fifty-foot lots and an alley from me. When I am at home I can hear the machinery running over there distinctly. I don't think I have been at home any time while the gin was running."

It appears that at the time of the trial but few bales of cotton had been ginned at all, and the foregoing is substantially all of the testimony on the subject. In our judgment the evidence is altogether too inconclusive and unsatisfactory to support the decree. The right to abate nuisances is a well-established doctrine of courts of equity, for it is a maxim of our law that the owner of property must so use it as not to materially injure another. But it can not be successfully contended that

a gin is a nuisance *per se.* Cotton gins are among the beneficial and useful appliances of modern life, and in a large part necessary to the rapid utilization of one of the staple products of the South, and, before a citizen should be permitted to abate a business or enterprise of this kind, he should be required to show that its operation was so conducted as to, in some material way, injure him, or interfere with the comfortable use of his own property. For a general discussion of the subject see Rouse v. Martin, 51 Am. Rep., 463; Gulf, C. & S. F. Ry. Co. v. Oakes, 94 Texas, 155.

Under the court's charge, before the jury were authorized to find for appellee, it was necessary that they find, from a preponderance of the evidence, that the operation of appellant's gin would materially interfere with the comfortable enjoyment of appellee's home as a private residence, or by reason of dust and lint reasonably threaten the health of appellee or members of her family, thus charging the law as we have indicated it to be. But, as before stated, we think the evidence wholly fails to establish such to be the case. The evidence entirely fails to show that any of the dust or lint spoken of by the witnesses penetrated appellee's residence. On one occasion only, it appears, a small particle of lint was picked up in her yard, and, while she may have heard the noise, nothing in the testimony shows that it was of such character or volume as to reasonably and materially affect the comfort or health of a person of ordinary sensibilities. Counsel for appellee does not very vigorously insist that the testimony adverted to establishes a nuisance, save that it is contended in effect that the operation of a gin so near appellee's residence necessarily constitutes a nuisance—that it is impossible to so operate it as that material inconvenience and injury can be avoided. If this contention be sound, it would necessarily follow that a gin so located would constitute a nuisance *per se,* and it can not be so affirmed. Inhabitants of the modern city are necessarily subjected to more or less of noise, of dust, and of other disagreeable things, and the only way in which they can be avoided is by seclusion from among the busy activities of the age, unless, indeed, we would destroy many progressive features and necessary enterprises of the time. If we live in a city, it is but reasonable that we abate somewhat of our own comfort and convenience for the common good.

We find no merit in appellant's exceptions to the petition, nor material error in the charge of the court, but, because of the insufficiency of the evidence, it is ordered that the judgment be reversed and the cause remanded.

*Reversed and remanded.*