### Z. T. Robinson et al. v. W. T. Dale et al.

Decided October 13, 1910.

**1.—Nuisance—Cotton Gin—Injunction.**

The construction and operation of a cotton gin near private residences is not *per se* a nuisance; and in a suit to enjoin the erection of such structure near plaintiff's home, the burden was upon plaintiff to prove that the particular kind of cotton gin which the defendant purposed to erect—and which it was alleged by defendant was different from and less objectionable than other gins—would cause the annoyances incident to the operation of gins having less improved machinery. Testimony that other gins constructed in a different way, caused annoyances, was not pertinent to the issue.

**2.—Trial Without Jury—Improper Evidence—Practice on Appeal.**

When a trial is before the judge without a jury, and there are no conclusions of fact filed by the judge in the record, the admission of improper evidence on the trial is not necessarily cause for reversal of the judgment. It will be presumed that the judge did not consider such evidence in rendering his judgment.

**3.—Nuisance—Injunction—Insufficient Evidence.**

In an action to enjoin the erection of a cotton gin, evidence considered and held insufficient to warrant the issuance of the injunction. Great caution is exercised in interfering with establishments and structures which tend to promote public convenience; in such cases it will not suffice to show a probable or contingent injury, but it must be shown to be inevitable and undoubted.

**4.—Cotton Gin—Nuisance—Remedy.**

If after a cotton gin is erected its operation proves to be a nuisance, persons injured thereby may have the same enjoined, and also recover such damages as they may show they have suffered.

**5.—Same—Diminution in Value—Fire Risk—Assembly of Crowds.**

The mere fact that the value of a homestead may be decreased or the risk from fire increased by the erection of a cotton gin nearby, is not a sufficient reason for enjoining the erection of the gin. And so as to the fact that crowds of people with their teams will be caused thereby to assemble near the home.

Appeal from the District Court of Wise County. Tried below before Hon. J. W. Patterson.

*McMurray & Gettys,* for appellants.—A cotton gin is not a nuisance *per se,* it being among the beneficial appliances of modern life, and the proposed erection and operation of one near the residences of other people will not be enjoined unless it is shown that it will necessarily interfere materially with the comfortable use of such residences by such owners. Hamm v. Gunn, 113 S. W., 304; Terrell v. Wright, 112 S. W., 211; Boyd v. Schreiner, 116 S. W., 100; Durfey v. Thalmeimer, 109 S. W., 519; Wood's Law of Nuisances (2nd ed.), secs. 3, 6, 7, 9, 10; League v. Journeay, 25 Texas, 172-3 (p. 183).

*R. E. Carswell* and *Robt. Carswell,* for appellees.—The evidence authorized the trial court to conclude, that the erection and operation of any kind of a gin at the place in question, would necessarily be a nuisance to appellees. Faulkenbury v. Wells, 68 S. W., 327; Missouri, K. & T. Ry. Co. v. Anderson, 81 S. W., 788; 29 Cyc., pp. 1156-64.

WILLSON, CHIEF JUSTICE.—Appellants, Z. T. Robinson and Reuben Robinson, owned a parcel of land fronting 191 feet on Sherman Street and 226 feet on Buffalo Street, and between 300 and 400 feet from the public square in the town of Chico, on which they were preparing to construct and operate a cotton gin. Appellee Dale owned and occupied as a home for himself and his family a dwelling house situated about 72 feet from the point where appellants proposed to erect the gin, and appellees Fulghum, Carson, Siddens and Arnn respectively owned and occupied as homes for themselves and their families dwelling houses situated at distances varying from 125 to 318 feet from the site chosen by appellants for the erection of said gin. A suit commenced and prosecuted by appellees to enjoin the construction and operation of the gin, on a trial before the court without a jury, resulted in a judgment in their favor against appellants, perpetually enjoining the latter from "erecting or operating a gin or gin plant" upon the parcel of land.

As grounds for the relief they sought and obtained, appellees alleged that the gin appellants proposed to erect would be operated by steam, and that, however carefully and skilfully it might be constructed and operated, it would, while it was being operated, make a great deal of noise, and would cause to be scattered over the neighborhood in which it was situated and upon and into their respective dwelling houses, smoke, dust, cinders, lint cotton, trash and other disagreeable and noxious substances, and would cause crowds of people with teams to congregate in such neighborhood day and night. They further alleged that danger to their respective premises from fire would be increased by the operation of the gin, and that the rate of insurance on their property, as a consequence, would be advanced. The effect, they alleged, of the annoyances, discomforts and dangers so to be caused, would be to render their property uninhabitable and valueless.

In their answer appellants averred that the gin they proposed to construct and operate was of a new kind, designed to obviate and which would obviate objections made to gins generally on account of smoke, dust, cinders, lint cotton, etc., escaping therefrom, and that its operation when constructed would not result in material injury to either appellees or their property.

In support of allegations in their petition, appellees, over appellants' objection thereto on the ground that same was irrelevant and immaterial, were permitted to prove by a number of witnesses who testified that they knew nothing about the particular kind of gin appellants proposed to construct, but that in the operation of certain other specified gins and of gins generally, noise was made, and that smoke, dust and lint cotton escaped therefrom into the air and were carried to nearby premises, causing the occupants thereof annoyance and discomfort.

The construction and operation of a cotton gin near private residences is not *per se* a nuisance, and we think the burden was upon appellees to show that the particular kind of gin appellants proposed to construct, when constructed as appellants proposed to construct it, would cause, when operated near private residences, the annoyances appellees anticipated. Testimony that other kinds of cotton gins, constructed in a different way, when so operated, caused such annoyances, did not, we think, tend to show that the gin appellants proposed to build when operated would cause them. Hamm v. Gunn, 51 Texas Civ. App., 424 (113 S. W., 304); Garigan v. Atlantic Refining Co., 40 Atl., 834; Munson v. Metz, 1 W. & W., sec. 245; Stephens v. Gardner Creamery Co., 57 Pac., 1058.

But while we think the testimony objected to was inadmissible, the action of the court in admitting it does not furnish a reason for reversing the judgment. The trial was before the court without a jury. His conclusions as to the facts are not a part of the record on this appeal. In this condition of the record, we must assume that the court did not consider and that his judgment was not influenced by the testimony referred to. Martin v. Frank Co., 125 S. W., 958. The seventeen assignments presenting questions made as to such testimony therefore are overruled.

By their eighteenth assignment appellants question the sufficiency of the evidence to support the judgment. We think this assignment should be sustained. It was shown that the gin appellants proposed to construct, in features designed to minimize if not entirely obviate vibration from its operation and the escape into the atmosphere to the annoyance of people and injury of property near the place it might be operated, of smoke, dust, lint cotton, etc., was different from other gins. No testimony was offered showing that in the actual operation of a gin like the one appellants proposed to build, constructed as they proposed to construct it, material injury either to appellees or to their property would result. The testimony on the part of appellants tended to show that the operation of such a gin so constructed would not materially

injure appellees nor their property. The most that can be said from the testimony is that the devices relied upon to obviate the annoyances and injuries caused by noise, smoke, dust, lint cotton, etc., in the operation of other kinds of gins differently constructed, might not prove to be as effective for that purpose as appellants contended same would, and as actual tests shown to have been made of other gins like the one appellants proposed to construct indicated they would be. Such testimony, we think, was not sufficient to authorize the judgment rendered. "Great caution," said a distinguished writer on the subject, "is exercised in interfering with establishments and erections which tend to promote public convenience, as in the case of mills; and in such cases it will not suffice to show a probable or contingent injury, but it must be shown to be inevitable and undoubted." 1 High on Inj., sec. 787. The same author says: "Where an injunction is asked to restrain the construction of works of such a nature that it is impossible for the court to know, until they are completed and in operation, whether they will or will not constitute a nuisance, the writ will be refused in the first instance." 1 High on Inj., sec. 743. The rule is thus stated by another writer: "The fact that a business which is lawful may become unlawful after it has been commenced is not a sufficient ground for enjoining the same. It must clearly appear to the satisfaction of the court that it will become a nuisance. So, it has been said in this connection: 'Before a court of equity will restrain a lawful work from which merely threatened evils are apprehended, the court must be satisfied that the evils anticipated are imminent and certain to occur.'" Joyce, Law of Nuisances, sec. 102. In Rouse v. Martin, 51 Am. Rep., 464, the Supreme Court of Alabama, in affirming a judgment dissolving an injunction restraining, on grounds similar to those urged in this case, the erection of a cotton gin within 88 feet of the plaintiff's residence, announced the same doctrine, when it said: "Where the injury complained of is not a nuisance *per se*, but may become so by reason of circumstances— being uncertain, indefinite or contingent—equity, as we have said, will not interfere."

If in the actual operation of the gin after it has been constructed as proposed, it should thereafter be made to appear that on account of noise, vibration, dust, cotton lint or smoke therefrom appellees are deprived of the comfortable enjoyment of their respective homes, they may be entitled to relief by injunction, as well as to a recovery of such damages as they are able to show that they have thereby suffered. The law seems to be settled that the mere fact that the value of a complainant's property may be decreased, or risk to it from fire be increased, by such a structure near his premises, is not a reason for granting an injunction. Rouse v. Martin, 51 Am. Rep., 465. And certainly the fact that crowds of people with their teams might congregate at or near a cotton gin when erected, would not furnish a reason for restraining the erection thereof. It should not be assumed that the individuals who might form such crowds would conduct themselves in otherwise than an orderly and

lawful manner. While and so long as they did so conduct themselves, their congregating together should not be treated as a nuisance.

We think the judgment granting the injunction should be reversed, and that a judgment dissolving same should be here rendered, but without prejudice to appellees' right hereafter to such relief if in the actual operation of the gin after same has been constructed, the comfortable enjoyment by them of their several homes should prove to be thereby materially affected. It will be so ordered.

*Reversed and rendered.*