MOORE et al. v. COLEMAN et al. (No. 8507.)

(Court of Civil Appeals of Texas. Ft. Worth. April 22, 1916.)

1. NUISANCE ☞61—NUISANCE PER SE—COTTON GIN.

A cotton gin is not a nuisance per se, but may become so by reason of the manner or place of its operation.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 142–151; Dec. Dig. ☞61.]

2. NUISANCE ☞75—SUIT TO RESTRAIN—BURDEN OF PROOF.

In a suit to enjoin the erection of a cotton gin as a nuisance, the burden is on petitioners to show by allegations, in a verified petition, where the relief is sought without hearing, or by both allegations and proof, where hearing is had, that the conditions constituting a nuisance exist, or will occur if defendants are permitted to erect the gin.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 176–184; Dec. Dig. ☞75.]

3. NUISANCE ☞62 — "NUISANCE" BY POLLUTION OF ATMOSPHERE.

An act, omission, or use of property, resulting in polluting the atmosphere with noxious or offensive odors, gases, or vapors, thereby producing material discomfort and annoyance to persons residing in the vicinity, or injuring their health or property, is a "nuisance."

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 153–157; Dec. Dig. ☞62.

For other definitions, see Words and Phrases, First and Second Series, Nuisance.]

4. NUISANCE ☞62—ABATEMENT BY INJUNCTION.

Not every use to which property is devoted causing incidental discomfort and annoyance to those residing in the vicinity will give rise to the right of injunction to abate it, but the surrounding circumstances, the location of the alleged nuisance, and the necessity of the objectionable features of the use will be considered by the courts in determining the right and propriety of granting injunctive relief.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 153–157; Dec. Dig. ☞62.]

5. NUISANCE ☞62—COTTON GIN AS "NUISANCE."

A cotton gin, the operation of which produces loud noises, and causes dust, sand, dirt, and cotton lint to be deposited in churches and residences thereabout, and also causes the deposit of offal and excrement from animals used in hauling cotton, the production of noxious gases and odors, and swarms of gnats and flies, is a "nuisance."

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 153–157; Dec. Dig. ☞62.]

6. INJUNCTION ☞144 — TEMPORARY INJUNCTION—VERIFIED PETITION.

In determining the propriety of granting a temporary injunction restraining, defendants from erecting a cotton gin on the ground that it would constitute a nuisance, the averments of the petition must be taken as true.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 316, 317, 321; Dec. Dig. ☞144.]

7. NUISANCE ☞75—INJUNCTION SUIT—PETITION.

In suit to restrain the erection of a cotton gin as a nuisance, where the petition alleged that certain results, harmful to plaintiffs, would follow the erection and operation of the gin, and "that the matters and things hereinbefore complained of are incident to, and the usual results of, such a gin plant as is contemplated and will be erected by defendants," the court was justified in concluding from the averments of the petition that the operation of the gin would entail the results alleged.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 176–184; Dec. Dig. ☞75.]

Appeal from District Court, Mitchell County; W. W. Beall, Judge.

Suit by P. C. Coleman and others against B. C. Moore and others. From an order granting a temporary injunction, restraining defendants from erecting a cotton gin on described lots, they appeal. Judgment affirmed without prejudice as to any hearing upon the merits.

R. G. Smith and T. R. Smith, both of Colorado, Tex., for appellants. Shepherd & Sandusky and C. H. Earnest, all of Colorado, Tex., and Beall & Douthit, of Sweetwater, for appellees.

BUCK, J. This is an appeal from the order of the judge of the district court of Mitchell county, entered in chambers, March 14, 1916, granting a temporary injunction, restraining appellants from proceeding to erect, and from erecting, a cotton gin on certain described lots in the city of Colorado, Tex.

In order to determine the sufficiency of plaintiffs' allegations, it will be necessary for us to review the petition as a whole, and we will, in brief, set out its contents.

Plaintiffs were shown to be: (1) Persons whose residences were located in the near vicinity of the proposed site of the gin whose erection was sought to be restrained; and (2) trustees of three churches, likewise so located, two of them alleged to be within 80 feet of the gin's proposed location. After reciting that prior to the filing of the petition, and after learning of the intentions of defendants, the plaintiffs had addressed a friendly letter to the three defendants, asking them to desist from erecting a gin on said

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

lots, representing to them that said gin would be and constitute a nuisance to the three churches mentioned, and to each of the several owners of residences who were plaintiffs, and praying for a pacific adjustment of the matter, without recourse to the courts, and that said letter received no attention, except an evasive reply, plaintiffs alleged that defendants were placing material on the ground, and were threatening to erect on said lots a cotton gin and other appurtenances thereto. Plaintiffs further averred "that the erection of the gin aforesaid on said lots of the defendants herein, and the operation thereof, will become a veritable nuisance to the churches for public worship located in the vicinity of said gin, and a nuisance to all the rest of your plaintiffs herein in the enjoyment of their homes; that the presence and location of the gin to be erected * * * will produce noises, loud and deafening," and that the noise from the operation of the machinery, the blowing of whistles, etc., would interfere with and prevent the use of said churches as places of worship, and interfere with the peace and quiet of petitioners' homes; that the operation of said gin would produce "clouds of dust and sand and dirt, which will be deposited by this operation" in said places of worship and homes; also that it would cause cotton lint to be deposited in same, so as to "render the use and habitation of such residences and churches intolerable." In addition to noise, dust, lint, etc., it was charged that the operation of said gin would cause many horses, mules, and other draft animals used in the hauling of cotton, cotton seed, etc., to gather at and congregate around said gin, and would cause the deposit of quantities of offal and excrement, the noxious gases and odors from which would cause the health of petitioners, in the use of their churches and homes, to become impaired, and would produce swarms of gnats, flies, etc., causing great discomfort and damage to petitioners. It was alleged the churches and residences of the petitioners were located in the residence section of the city, and that they were highly improved with trees, plants, flowers, etc., and that the dust, lint, etc., would settle thereupon and would destroy the same; that the prevailing winds in the locality of Colorado are from the south during the cotton season which would intensify the damages and injuries from the dust, lint, flies, gnats, noise, and odors emanating from said cotton gin plant to be erected, petitioners' premises lying and being situated north and northeast from said plant. In one of the paragraphs of plaintiffs' petition is contained the following allegation, to wit:

"That the matters and things hereinbefore complained of are incident to and the usual results of such a gin plant as is contemplated and will be erected by defendants."

It is also alleged that the fire hazard will be increased by the erection of said plant.

It is urged by appellants that the court erred in granting the writ without notice, for the following assigned reasons, to wit: (1) Because "an application for injunction which does not disclose the injuries sought to be restrained to be imminent, so that full relief cannot be had at a trial on the merits before they occur, should be denied"; (2) because the petition shows on its face that the injuries alleged and complained of are merely threatened, probable, and contingent, not inevitable and undoubted; (3) that the operation of a cotton gin is not a nuisance per se.

[1, 2] It is true that the authorities hold that a cotton gin is not a nuisance per se, but may become so by reason of the manner or place of its operation. Robinson v. Dale, 131 S. W. 308; Hamm v. Gunn, 51 Tex. Civ. App. 424, 113 S. W. 304; 1 High on Injunctions, § 787. But a cotton gin which causes noise, vibration, dust, and cotton lint, or smoke, so that owners are deprived of the comfortable enjoyment of their homes, is held, in Robinson v. Dale, supra, a nuisance. The burden would be on the petitioner seeking an injunction to show, by allegations in verified petition, where the relief was sought without a hearing, or by both allegation and proof, where a hearing was had, that the conditions constituting a nuisance do exist, or would occur if the defendant were permitted to do the thing or create the condition against which complaint is made. Blackstone defines a private nuisance as:

"Anything done to the hurt or annoyance of the lands, tenements, or hereditaments of another."

"A nuisance per se is an act, thing, omission, or use of the property which, in and of itself, is a nuisance, and hence is not permissible or excusable under any circumstances." Eng. & Am. Enc. of Law (2d Ed.) vol. 21, p. 684.

"A nuisance at law or a nuisance per se is an act, occupation, structure, which is a nuisance at all times and under all circumstances, regardless of location or surroundings." 29 Cyc. 1153, and authorities in note (10) thereunder.

[3, 4] It may be laid down broadly, as a general rule, that any act, omission, or use of property that results in polluting the atmosphere with noxious or offensive odors, gases, or vapors, thereby producing material discomfort and annoyances to those residing in the vicinity, or injuring their health or property, is a nuisance. Ft. Worth v. Crawford, 74 Tex. 404, 12 S. W. 52, 15 Am. St. Rep. 840. Wood on Nuisances (1883 Ed.) § 3. While it is not every use to which property is devoted causing incidental discomfort and annoyance to those residing in the vicinity that will give rise to the right of injunction in order to abate it, yet the surrounding circumstances, the location of the alleged nuisance, the necessity vel non of the objectionable features of the use, will be considered by the courts in order to determine the right and propriety of granting the relief prayed. The author above cited (section 6) well says:

"A party who devotes his premises to a use that is strictly lawful in itself, that is fruitful of

great benefits to the community, that adds materially to its wealth, and enhances its commercial importance and prosperity, and whose motives are good and intentions laudable, may find that, by reason of the violation of the rights of those in the vicinity of his works, from results that are incident to his business and that cannot be so far corrected as to prevent the injury complained of, his works are declared a nuisance, his business stopped, and himself involved in financial ruin. Therefore it is proper and highly important that courts should proceed with extreme caution, and weigh the relative rights of parties with exceeding care, and never declare a business a nuisance except there be such essential injury and damage that the act or thing cannot be justly tolerated without doing great violence to the rights of individuals and the public. People living in cities and large towns must submit to some inconvenience, to some annoyance, to some discomforts, to some injury and damage; must even yield a portion of their rights to the necessities of business, which, from the very nature of things, must often be carried on in populous localities and in compact communities, where facilities alone exist upon which it can be kept up and prosecuted."

But on the other hand, even though a business be lawful, and even though it contribute to public convenience and prosperity, one should not be permitted to conduct it in a manner or in a locality where it will unnecessarily work injury to those living in the vicinity. Therefore it was held in Hockaday v. Wortham, 22 Tex. Civ. App. 419, 54 S. W. 1094, that an injunction would lie to restrain the use of premises for a barnyard and breeding ground for live stock in a town, and an injunction was held proper to restrain defendants from maintaining a feed stable and wagon yard. Woods v. Lowrence, 49 Tex. Civ. App. 542, 109 S. W. 418; Burditt v. Swenson, 17 Tex. 489, 67 Am. Dec. 665. None of the uses to which the defendants in these cited cases put their property were nuisances per se, but were held to be so because of the manner of the use, the locality and construction of the improvements. In the last-cited case, Justice Wheeler says:

"A livery stable in a town is not necessarily or prima facie a nuisance. Such erections may be, and usually are, harmless and useful. But if they be so built, or so kept, or so used, as to destroy the comfort of persons owning and occupying adjoining premises and impair their value, stables do thereby become nuisances."

[5-7] We are of the opinion that plaintiffs' petition contains averments sufficient to show that the cotton gin proposed to be erected would, in the locality where placed, and in the manner in which it was alleged it would be operated, be a nuisance. But it is urged that the injuries sought to be restrained and described in plaintiffs' petition are contingent, only probable, and may never occur; that with modern devices and equipment much of the discomforts and annoyances could be, and would be, obviated. But we think the court below was justified in concluding from the averments of the verified petition that the operation of the character of gin defendants were proposing to erect would entail the results alleged. The aver-

ments must be taken as true. If defendants proposed to erect a kind of gin different from that alleged in plaintiffs' petition, of a character that would avoid and eliminate the objectionable incidents stated, by a motion to dissolve, predicated upon proper pleadings and supported by evidence, such facts could have been established. Defendants have not seen fit to take this course, but have relied upon the claimed insufficiency of plaintiffs' petition, and upon such petition the trial court, and this court, must base its conclusions and judgment. Plaintiffs, it is true, have acted with promptness, but, as is said in High on Injunctions, § 786:

"He who seeks relief against a nuisance must show due diligence in the assertion of his rights; and when complainant has been guilty of great laches, or has allowed defendant for a long period to continue in the erection of his obnoxious structure at great expense and without molestation, equity will not interfere."

If the court had set the case for hearing for the May term, as defendants claim ought to have been done, it may be that the plaintiffs would have been enabled to secure the protection claimed before the operation of the gin began, yet, on the other hand, defendants would either have been forced to stop the further erection of the plant until a hearing, or take the chances of an adverse holding of the court after greater expense had been incurred. As before suggested, if defendants had desired a speedier hearing on the facts, they could undoubtedly have secured the same by filing their motion to dissolve. We are not prepared to say or hold that the court below erred in granting the temporary injunction on the showing made.

The judgment of the trial court is affirmed, without prejudice as to any hearing upon the merits which may be had.