STRIEBER et al. v. WARD et al. (No. 5934.)

(Court of Civil Appeals of Texas. San Antonio. June 15, 1917.)

1. NUISANCE ⬅=80 — COTTON GIN — INJUNCTION.

The building of a cotton gin and mill in a business district intersected by a railroad, where mills, gins, and factories are running, and there are only three residences, will not be enjoined at the suit of the owners of these residences on the ground that their inmates will be annoyed by noise, and dust being blown there by the wind, where it is not claimed that the property will be rendered worthless or uninhabitable, nor that defendants are not able to respond in damages that might be found against them.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. § 192.]

2. NUISANCE ⬅=80—INJUNCTION.

The erection of gin in a business district will not be enjoined as a nuisance at the suit of owners of residences in the neighborhood in order to force defendants to buy property of plaintiffs, or to protect one not a party to the suit from competition in his line of business.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. § 192.]

3. NUISANCE ⬅=80—PRESUMPTIONS.

Unless it should appear that a cotton gin cannot be used or controlled, so as not to injure adjacent property, plaintiffs cannot enjoin its erection, for, the business of ginning being legitimate, and not a nuisance per se, it is presumed that it will be conducted in such a manner as not to injure any one.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. § 192.]

4. NUISANCE ⬅=84—EVIDENCE.

It is not sufficient to show that a cotton gin will be a nuisance to residents in the neighborhood, that other gins built in the vicinity have caused inconvenience due to noises and dust, where the evidence shows that improved machinery will be used which will eliminate them, and which is not shown to have been used in the other gins, and where it appears that the prevailing winds are such as not to carry dust from the proposed gin to plaintiffs' residences.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 196–199.]

Appeal from District Court, Karnes County; F. G. Chambliss, Judge.

Action by D. R. Ward and others against C. L. Strieber and others. From a judgment in favor of plaintiffs, defendants appeal. Reversed and remanded.

Faith & Murray, of Runge, and H. W. Wallace, of Cuero, for appellants. W. T. Scarborough, of Runge, Williamson & Klingemann, of Karnes City, and Fly & Ragsdale, of Victoria, for appellees.

FLY, C. J. This is a suit instituted by D. R. Ward, A. B. Mueller, A. B. Schroeter, Will Booth, and Mrs. Emma Schrade, as guardians of the estate of Edward Springer, a minor, to restrain C. L. Strieber, W. F. Strieber, A. A. Strieber, and F. F. Strieber from erecting a mill and gin on lots 1 to 6, inclusive, forming the south half of block 26 in the town of Runge. A. R. Schroeter and Mrs. Schrade withdrew from the suit and need not be further mentioned. It was alleged that Will Booth, with his family, lived about 225 feet in a north direction from appellants' lots, that A. B. Mueller was the owner of a lot 175 feet north from the intended site of the mill and gin, and that Ward resides with his family about 200 feet from the intended site. It was alleged that dust, dirt, and cotton fibres from the intended improvements would be carried by prevailing south winds to the residences of appellees, and would destroy their comfort and render them almost uninhabitable, and that the noises would disturb the peace and comfort of the inmates of the homes.

A temporary restraining order was granted, and on a hearing of a motion to dissolve, the court held that the injunction was properly granted, but because some of the plaintiffs had withdrawn and bondsmen on the bond for injunction asked to be relieved, and because appellees consented to file a new bond, a new temporary writ would be granted. Then follows the order:

"It is therefore on this the 16th day of May, A. D. 1917, ordered, adjudged and decreed by the court that the said temporary injunction as heretofore issued in this cause, be hereby and the same shall stand dissolved and abated. But it is further ordered, adjudged and decreed by the court that upon said plaintiffs, Ward, Mueller and Booth, filing their bond in this cause within five days from this date in the sum of $1,000, conditioned and approved as required by law, that the clerk of the district court

---

⬅=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of Karnes county will issue the temporary writ of injunction, enjoining and restraining the defendants as prayed for by said plaintiffs, and said defendants are hereby restrained pending the filing by plaintiffs of said new bond or said five days, from doing any of the acts complained of by plaintiffs."

Schroeter, who withdrew from the suit, swore that one of the Arnims, who owns two gins in the vicinity, one in an adjacent block to the west, induced him to join in the suit and promised to pay all expenses. This was not denied by Arnim. Ward, prior to the institution of the suit, had consented to a gin being built where appellants desire to build, and afterwards he signed a petition protesting the building of the gin, presented to him by Booth and Mixon, the latter who was operating a gin. Arnim consulted with the attorneys of appellees, and was present at the trial, but did not testify. The proposed gin and mill will be situated on a block facing the railroad track in a milling and business district. One of the Arnim gins is on the block immediately west of appellants' land, and another just across the railroad south. There is in the neighborhood the oil company premises, the round bale company plant, and the warehouse company block. There are three gins on three blocks in that neighborhood. On Helena street, one block east of appellants' land, are many business houses of the town. Ward is on the northeast lot of block 26, on which is situated appellants' land, and directly across the street north, is Schroeter's printing office, in which is operated a gasoline engine, which makes noise as do all gasoline engines, more or less. Arnim lives in the northeast corner of block 13, just across the street from where appellants propose to build. Mueller has no house on his lot in the northwest corner of block 26, but got out a building permit after he heard that appellants intended to erect a mill and gin on the south part of the block. Just across the street from appellants' land are the shipping pens, and just east of those are the city jail and beer house. The uncontroverted testimony showed that appellants were seeking to build in a district of mills, gins, warehouses, electric light works, shipping pens, jails and beer houses, and not in a residence district. The prevailing winds in no season would carry dust over Ward's house from the proposed gin site. The suit seems to be one more to suppress competition in the ginning business than to suppress or prevent a nuisance. Arnim said there was not enough business for another gin. There is testimony tending to show that Mueller and Ward wanted to sell their property and deemed the time and circumstances auspicious. Mueller admitted that he asked Reuser if he thought appellants would buy his lots, and that Ward wanted to sell too. Mueller's father runs a gristmill in Runge. Booth lived just across the street from Arnim's gin, but never complained to him about the dust and lint. Ward admitted seeing Arnim in his at-

196 S.W.—46

torney's office and discussing "the facts in front of him about this injunction." He also admitted that he tried to sell his property to appellants.

[1] The evidence clearly shows that the proposed gin and mill were to be erected in a district intersected by a railroad and where mills, gins, and factories were running. It was not a residence district, there being only three residences in the vicinity and one of them owned by Arnim on his gin block. Such vicinities as the one described in the evidence are those usually, if not always, set apart to business, and cannot be protected for residence purposes. About depots and stations people do not usually build their houses, and, if compelled by circumstances so to do, it must be done with the disturbances and annoyances in view that are naturally connected with such places. As said by Judge Key in Gose v. Coryell, 59 Tex. Civ. App. 504, 126 S. W. 1164:

"The better considered cases and the weight of authority are to the effect that in cases of this kind locality is to be considered in determining whether there is a nuisance, and if so, whether relief should be awarded by injunction or the injured party restricted to an action for damages, for what might constitute a nuisance in one locality might not be so in another. It has been held that a business which might be proper in a business or manufacturing neighborhood may be a nuisance when conducted in a residential district; and, on the other hand, a business which with its incidents might well be considered a nuisance in a residential section of a city or village may not be subject to such complaint where conducted in a business or manufacturing locality."

There was nothing unreasonable in the attempt of appellants to build their gin and mill in a section of gins, mills, and other business houses, and the existence of isolated homes in the section should not lay them liable to be enjoined from using their property for lawful purposes. If they are compelled to build in a neighborhood where there is no residence, they may be compelled to leave Runge and hunt for a more hospitable place. As said by Judge Cooley in the case of Gilbert v. Showerman, 23 Mich. 448, cited in the Gose-Coryell Case:

"We cannot shut our eyes to the obvious truth that if the running of this mill can be enjoined, almost any manufactory in any of our cities can be enjoined upon similar reasons. Some resident must be incommoded or annoyed by almost any of them. In the heaviest business quarters and among the most offensive trades of every city will be found persons who, from motives of convenience, economy or necessity, have taken up their abode; but in the administration of equitable police, the greater and more general interests must be regarded rather than the inferior and special. The welfare of the community cannot be otherwise subserved and its necessities provided for. Minor inconveniences must be remedied by actions for the recovery of damages rather than by the severe process of injunction."

This was said in a case in which the residence was already built and occupied and the mill was only contemplated. It fits this case with great precision. To the same effect is Rainey v. Railway, 99 Tex. 276, 89

S. W. 768, 90 S. W. 1096, 3 L. R. A. (N. S.) 590, 122 Am. St. Rep. 622, 13 Ann. Cas. 580, in which it is said:

"So if the injury be small and capable of being estimated in money and a money payment is an adequate compensation, and the injunction would operate oppressively to the defendant, then it may be that it would be proper to refuse to enjoin."

In the case before this court the appellees swore to the amount each would be damaged by the erection of the gin and mill, and did not claim that their property was rendered worthless or uninhabitable. Appellants were not compelled to buy the property of appellees, as they evidently desired, in order to use the property owned by them in a milling district.

[2] It is not contended that appellants are not amply able to respond in damages that may be found against them in this case as sustained by appellees, and no necessity appears for the issuance of an injunction to prevent the use of their property by appellants, in a location in which the facts show they have a right to use it as desired by them. Equity will not allow appellees to have an injunction either to force a sale of their property or to protect one not a party to the suit from competition in his line of business.

[3] Unless it should appear that a cotton gin cannot be used or controlled so as not to injure adjacent property, they could not enjoin the building of the mill, for the business of ginning being legitimate, it will be presumed that it will be conducted in such a manner as not to injure any one. It cannot be said that a cotton gin is a nuisance per se, and appellees failed to show that it would necessarily be used in such a way that it would become a nuisance. Pom. Eq. No. 5; vol. 1, § 524; Faulkenbury v. Wells, 28 Tex. Civ. App. 621, 68 S. W. 327; Hamm v. Gunn, 51 Tex. Civ. App. 424, 113 S. W. 304. As said in the case last cited:

"Cotton gins are among the beneficial and useful appliances of modern life, and in a large part necessary to the rapid utilization of one of the staple products of the South, and before a citizen should be permitted to abate a business or enterprise of this kind, he should be required to show that its operation was so conducted as to in some material way injure him or interfere with the comfortable use of his own property."

If a citizen builds his house near a railroad depot, in a locality rarely used for residence purposes, but set apart to all kinds of factories, warehouses, and machine shops, he must be content to endure the inconveniences and annoyances, incident to such location. Not only this, but when the inspiration of his appeal for relief appears to be drawn from a mill and gin owner seeking to circumvent a proposed rival and stifle competition, small consideration will be given his prayer for relief in a court of equity.

[4] The uncontroverted evidence shows that improved machinery will be used by appellants which will eliminate dust, and Ward's house is northeast of the land of appellants, and not in the line of prevailing winds in either season of the year. It was in proof, and every Texan knows, that the prevailing winds in summer are from the southeast, and could not carry dust from a point southwest of a given point to that point. As shown by the evidence a southwest wind rarely blows in this part of Texas, and no other wind would carry dust or lint from the proposed location of the gin to Ward's house. If Booth's house is, as he says, directly north of the proposed gin site, the dust would not be carried by the prevailing southeast summer winds to or near his home. Dust from lot 6 in block 26 might be carried to his house, but it was not proposed to place the gin on that lot, but on the opposite corner. No complaint was ever made of the dust by Booth, although he swore that he had been troubled for years by the dust from the Arnim gins. Mueller has a lot, but no house on block 26, and the building of a mill in a business district should not be stopped because Mueller might conclude to build a house at some time.

Recurring to the evidence as to the operation of the proposed gin causing annoyance, discomfort, and inconvenience to appellees, we find that the gin to be erected is of the most modern and improved pattern, that it has appliances for minimizing the escape of dust or the creation of noises, and there is no testimony that tends to controvert that testimony. The only testimony relied upon by appellees to show that the gin will be a nuisance is that other gins theretofore built in the vicinity had caused the inconveniences of which complaint was made, and it was anticipated that the new gin would cause similar discomfort and annoyance. Whether the old gins have the modern appliances for prevention of the dissemination of dust and the repression of noises was not shown. No effort was made to meet the evidence offered as to the effective appurtenances of gins that would be employed in the proposed building to lessen dust and sound. A gin is not a nuisance per se, even though erected in the immediate vicinity of residences. In this southern country, filled with a rural population, which prospers or materially suffers in the same ratio that the cotton, one of the controlling products of the world, is productive or otherwise, the cotton gin, one of the greatest inventions of the age, could never be classed as a nuisance without ample evidence to place it in that undesirable class. Usually a cotton gin is a blessing in any southern community to the farmer and producer, a necessity and not a nuisance. Rouse v. Martin, 75 Ala. 510, 51 Am. Dec. 463, and notes thereunder; Robinson v. Dale, 62 Tex. Civ. App. 277, 131 S. W. 308; Moore v. Coleman, 185 S. W. 936.

The judgment is reversed, the temporary injunction dissolved, and the cause remanded for a trial on the merits.