**VON HATZFELD v. NEECE et al.**
**(No. 9462.)**

(Court of Civil Appeals of Texas. Ft. Worth.
June 26, 1920.)

**1. Nuisance ⚖══4—Actual physical discomfort to persons of ordinary tastes essential.**

A court of equity has power in proper case to restrain the construction of buildings for the conduct of a business which will materially injure or annoy adjoining owners, but there must be a threat of actual physical discomfort to persons of ordinary sensibilities and ordinary tastes and habits, such as is unreasonable and in derogation of the complaining party's rights.

**2. Nuisance ⚖══3(2)—Grocery store not nuisance pen se.**

The conduct of a grocery store in a residential section is not a nuisance per se enjoinable in equity at once and as a matter of law.

**3. Nuisance ⚖══3(2)—Grocery store in residential section held not enjoinable.**

Conduct of grocery store by defendant in residential section, about 53 feet from the residence of the nearest plaintiff, *held* not such a nuisance as to be subject to injunction at the instance of complaining property owners.

Appeal from District Court, Palo Pinto County; J. B. Keith, Judge.

Suit by C. T. Neece and others against Chas. Von Hatzfeld. From an order refusing to wholly vacate temporary writ of injunction, defendant appeals. Judgment reversed, and writ vacated and set aside.

Penix, Miller, Perkins & Dean, of Mineral Wells, for appellant.
Gross, Gross & Zivley, of Mineral Wells, for appellees.

CONNER, C. J. This appeal is from an order of the district court of Palo Pinto county refusing to wholly vacate a temporary writ of injunction theretofore issued upon the petition of the appellees in this case. The material allegations of the appellees' petition, which form the basis of the temporary writ that had been issued, are as follows:

"Plaintiffs further allege that said property is in a very desirable residence portion of the city of Mineral Wells, Tex.; in fact, one of the best in said city; that said street is one of the most public thoroughfares in the city; that plaintiffs Neece and Miller have recently purchased their respective homes, as hereinbefore described, because of the valuable and attractive location of same; that said purchases were made and their homes established on said lots because of the surrounding houses and lots being exclusively for residences; that plaintiff C. C. Bennett purchased his said lot for the purpose of erecting thereon a fine residence for sale, because of its fine location, as

hereinbefore alleged with respect to the homes of the said Neece and Miller. Plaintiffs allege, that the residence houses on said lots are set back about 12 feet from the street line, leaving a yard in front of each house.

"Plaintiffs further allege that the defendant has begun the erection and construction of a wooden store building on the lot adjoining the lot belonging to the said Neece, and being part of said block No. 17, Wiggins'. addition to said city, which is being erected flush with the line of the street and about 10 feet from the southeast corner of the driveway leading from the street into the garage on the lot of the said plaintiff Neece, and which extends back west about 40 feet and obstructs the free passage of air and the view of plaintiff's premises from the south and southeast; that defendant is erecting said building for the purpose of opening some kind of a mercantile business therein, to wit, a grocery store, in which will be handled such goods, wares, and merchandise as is usual and customary in such business, among which are fruit, vegetables, fruit and country produce; that the same will be 12 or 15 feet high, and will injure plaintiffs' property by rendering same less comfortable and reducing the value thereof in large sums of money, the amount of which cannot now be ascertained; that said building and the business proposed to be carried on therein will be a continuous nuisance to the plaintiffs and a material damage to the value of their property, by creating unpleasant odors, smells, and collections of refuse and boxes, and by drawing flies to the neighborhood, thereby jeopardizing and menacing the health and comfort of plaintiffs and their families; that said building and said business, if permitted to stand and be conducted therein, will render plaintiffs' property undesirable and unsatisfactory to them and to their families, and reduce the value thereof to such an extent that plaintiffs cannot sell their said properties for anything like the amount they have invested in them."

Upon a motion to dissolve, the court overruled appellant's demurrer to the petition, and heard evidence offered by the plaintiffs in support of their allegations, and dissolved the writ in so far as it restrained the defendant from the erection of the building described in the petition, but otherwise continued the operation of the temporary writ restraining the defendant from using the house and premises as a grocery store until a final hearing of the cause upon its merits.

Complaint here is made both of the action of the court in overruling the defendant's demurrer to the petition and in further restraining him from the use of the premises in conducting the business of a grocer as designed by him, and we have concluded that both complaints are well founded.

[1] The power of a court of equity in a proper case to restrain the construction of buildings for the conduct of a business which, to a material extent, results in an injury to or annoyance of adjoining owners, is undoubted. But it is said in treating of

⚖══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the subject in High on Injunction, vol. 1, § 781, that—

"In determining whether a proper case is presented for relief by injunction against nuisances to buildings in cities, a satisfactory test is whether the matter complained of produces such a condition of things as in the judgment of reasonable men is productive of actual physical discomfort to persons of ordinary sensibilities and of ordinary tastes and habits, and such as, in view of the circumstances of the case, is unreasonable and in derogation of plaintiff's rights."

The same authority, in section 774 of the same volume, says:

"To justify a court of equity in enjoining a nuisance of the class under consideration, the person aggrieved must show to the court some actual substantial damage, and not merely a remote, contingent, or prospective injury."

[2] It must be conceded, and appellees do concede, that the erection of the building and the business proposed to be done by the appellant is not a nuisance per se, that is, they do not inherently and necessarily amount to that character of nuisance which a court of equity will at once and as a matter of law enjoin. In a note to the case of Oehler v. Levy, 17 L. R. A. (N. S.) 1025, it is said:

"The rule that, where the 'thing sought to be restrained is not unavoidably and in itself noxious, but only something which may, according to circumstances, prove so,' an injunction will not lie in advance," etc.

Thus, in the case of Dunn v. City of Austin, 77 Tex. 139, loc. cit. 143, 11 S. W. 1125, 1127, it was said:

"When the matter complained of is not in itself a nuisance, when it is not in its very nature hurtful to others, when it does not of necessity threaten to impair materially the health and comfort of those who may live near it, and the fact that it is a nuisance has not been established at law, the court abstains from interference, unless a case of pressing necessity is shown by the bill and by the proof. Bosser v. Randolph, 7 Porter, 238. Nor will the court interfere when the thing complained of is not in existence, but may be called into existence by threatened acts of the defendant in the exercise of his lawful dominion over his property, and it is uncertain, dependent on the circumstances in the future, whether it will or not operate injuriously" (citing numerous cases).

The case just cited was one in which the plaintiff sought to enjoin the city of Austin from the establishment of a cemetery.

In the case of G., C. & S. F. Ry. Co. v. Oakes, 94 Tex. 155, 58 S. W. 999, 52 L. R. A. 293, 86 Am. St. Rep. 835, it was said, among other things, that—

"It is a general principle of law that the owner of property may use it as he chooses, in any lawful way; but another maxim, in general terms, requires him to so use it as not to injure another. The application of these principles gives rise to some of the most difficult questions and delicate distinctions known to the law. Bishop concisely states the general doctrine thus: 'One may not, either voluntarily or negligently, cast earth or other substance from his own ground on a neighbor's; or upon his own bring or erect anything, or change the natural position of anything, from which the air, the moving water, or any other force of nature will, bear to another on other land what is distinctly injurious to him; or, by any excavation, structure, or other change of his premises from their natural condition, render them unsafe to other persons and their property lawfully thereon; while yet these restraints will not be drawn so closely as substantially to deprive him of the use of his lands, or the ordinary pursuit of his own interests or to render him answerable for inevitable accidents injuring others.' "

And it was held in that case that the planting of Bermuda grass on its right of way by a railway company, not being in itself unlawful, did not amount to a nuisance rendering the company liable for damages, unless it was shown to have been done under circumstances making it an unjustifiable use of its property by the company.

[3] Tested by the principles indicated above, it seems clear to us that the injunction in this case, either as alleged or as proven, was unauthorized. As said by this court in the case of Hamm v. Gunn, 51 Tex. Civ. App. 424, 427, 113 S. W. 304, loc. cit. 306:

"Inhabitants of the modern city are necessarily subjected to more or less of noise, of dust, and of other disagreeable things, and the only way in which they can be avoided is by seclusion from among the busy activities of the age, unless, indeed, we would destroy many progressive features and necessary enterprises of the time. If we live in a city, it is but reasonable that we abate somewhat of our own comfort and convenience for the common good."

A house and business of the kind complained of in the plaintiffs' petition may be said to be a necessary convenience to the inhabitants of a city, and to deny the owners of property from conducting such business in a proper manner and under proper safeguards to prevent an inconvenience and injury to others, merely because it encroaches upon a residence section, is to deny expansion, and perhaps to deny many others than the complaining party of a convenience. Indeed, one of the witnesses who testified upon the hearing below, who lived nearby, testified that he did not object to the contemplated construction and business of appellant because he thought it would be a convenience to him.

One of the allegations of plaintiffs' petition and the weight of the complaining testimony is to the effect that the contemplated business of appellant would largely decrease

the value of the adjoining property. But it was said in the case of Dunn v. City of Austin, supra, that, while the proximity of a cemetery would render adjacent property less valuable than it otherwise would be, this "furnishes no reason why the owner of ground so used should be restrained from continuing the use so long as that does not create a nuisance."

In 2 Story's Equity Jurisprudence, § 1253, it is said, among other things, in discussing a right of action against a party for a nuisance which will justify the interposition of courts of equity to redress the injury or to remove the annoyance, that—

"A mere diminution of the value of property by the nuisance, without irreparable mischief, will not furnish any foundation for equitable relief."

The same was said by this court in the case of Shamburger v. Scheurrer, 198 S. W. 1069, where the general subject is discussed very clearly in an opinion by Mr. Justice Buck.

Another complaint, and perhaps the one made most prominent by the evidence, is that a grocery store will collect flies by reason of the character of the business and by reason of the asserted fact that it is accompanied by the deposit of refuse of various kinds on the outside; but we venture the assertion that these results are not necessarily and inherently so related to the business as to constitute it a nuisance. Should appellant's business in fact be so conducted as to materially injure or give annoyance to neighboring owners, he may then perhaps be enjoined, but until then plaintiffs, we think, show no legal or equitable right to interfere with what is otherwise a lawful business, pursued upon appellant's own property. The general character of merchandise kept in a grocery store is ordinarily to be found in the kitchen of every housekeeper and many other things that cannot lawfully be inhibited have the same tendency of attracting flies. For instance, one of the witnesses in this case who lived immediately adjoining one of the plaintiffs testified that he kept a cow that attracted flies. With the ordinary conveniences and appliances of modern city life, annoyance and danger from flies, save such as may be said to be common to all citizens alike, can be largely avoided, but we do not think it can be said in advance that the appellant in the conduct of his business will so conduct it as to materially affect the comfort, convenience, and well-being of appellees; it appearing that the contemplated grocery store is to be located some 53 feet from the residence of the nearest plaintiff.

In High on Injunction, § 774, from which we have already quoted, it was said that

equity would not enjoin "the proposed erection as a nuisance merely because it will obstruct the view of plaintiff's place of business."

In Hamn v. Gunn, supra, this court refused to sustain an injunction to prevent the operating of a gin on city lots near the residence of Mrs. Gunn. In Shamburger v. Schurrer, supra, we refused to perpetuate a temporary injunction restraining the erection and maintenance of a lumber yard on certain lots in the near proximity to the petitioner's residence and property. So it was said in the case of City of Richmond v. House, 177 Ky. 814, 198 S. W. 218, by the Court of Appeals of Kentucky, quoting from the headnote, that—

"Although a stockyard, in a partial residence district within 20 feet of a church, may become a nuisance, injunction will not lie to prevent it, where it · is not shown · that the noise or odor has caused any discomfort or ill effects, and apprehended injury is doubtful."

We might add numerous illustrations, but we think we have said enough to justify our conclusion that neither by allegation nor by proof have the appellees in this case shown a right to the immediate injunctive relief which they sought.

It is accordingly ordered that the judgment below be reversed, and the temporary writ of injunction theretofore issued be vacated and set aside.