**GOOSE CREEK ICE CO. et al. v. WOOD et al. (No. 7958.)**

(Court of Civil Appeals of Texas. Galveston. April 8, 1920. Rehearing Denied June 10, 1920.)

1. **Nuisance** ⊙⟶33—**Evidence held insufficient to sustain temporary injunction against ice factory.**

Evidence *held* insufficient to sustain an order granting a temporary injunction against the construction and operation of an ice factory on the ground that the noises, fumes, and waste water would interfere with the enjoyment of plaintiffs' homes.

2. **Nuisance** ⊙⟶3(5)—**Ice factory not a nuisance per se.**

An ice factory, being a lawful and useful business enterprise in any community, its construction and operation is not a nuisance per se, though by its location and the manner of its operation it might become one.

3. **Nuisance** ⊙⟶23(1)—**Grounds for injunction defined.**

The construction and operation of an ice factory will not be enjoined at the suit of adjacent home owners, apprehending injury from its operation, unless it is shown that its operation will necessarily be a nuisance.

4. **Nuisance** ⊙⟶23(1)—**Requisites of showing for injunction defined.**

To authorize an injunction preventing the use by the owner of his property for any lawful purpose or in the carrying on of any lawful business, it must be shown that such use will materially injure or damage the person complaining of such use.

5. **Nuisance** ⊙⟶25(2)—**Injunction causing loss to defendants denied.**

Where a suit to enjoin construction and operation of an ice factory is instituted after the work has progressed so far that defendant's loss, if restrained, will exceed the value of plaintiffs' property, equity will not grant the injunction but will leave plaintiffs to recover any damages sustained if the factory, when put in operation, proves to be a nuisance.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Action by M. T. Wood and others against the Goose Creek Ice Company and others. From an order granting a temporary injunction, defendants appeal. Reversed and rendered.

Smith & Crawford, A. M. Huffman, and J. B. Dailey, all of Beaumont, for appellants.

S. T. Deason, of Goose Creek, and Stevens & Stevens, of Houston, for appellees.

PLEASANTS, C. J. This appeal is from an order of the district court granting a temporary injunction in a suit brought by appellees to enjoin the construction and operation by appellants of an ice factory upon land owned by appellants adjoining premises owned and occupied by appellees as their respective homes.

The plaintiffs, M. T. Wood, Charlie Diese, and C. A. Schroeder, allege in their petition, in substance, that they reside upon premises owned by them in the town of Goose Creek, Harris county, Tex., their said homes being situated on lots 3 and 4 in block 22, and lot ——, in block 29, respectively, in said town; that the lots on which plaintiffs' homes are situate lie just south of and adjoining land owned by the defendants, the Goose Creek Ice Company, a corporation, and W. T. Moon, and that said defendants are erecting and installing an ice factory on their said land, with the intention of operating said factory in the manufacture of ice for the residents of said town; that the nature of said business is such that it will require the installation of a vast amount of machinery, which will the greater portion of the time be in operation day and night; that the escape of steam and the unusual and harsh noises caused by the operation of said machinery will render the quiet and peaceable enjoyment of plaintiffs' said property impossible; that the nature of said business will require the storage on said premises at all times of chemicals, the fumes of which will endanger the life and health of plaintiffs, and such fumes, together with the noise

---

⊙⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of said machinery, and escaping of steam and waste water, will greatly endanger the life and health of plaintiffs, and will render their said property, which is worth the sum of $4,500, worthless as residence property; that plaintiffs will otherwise sustain grave and irreparable damage by reason of said ice factory erected and operated so near plaintiffs' property; and that they will be deprived of the use, quiet, and peaceable enjoyment of their said homes; and praying for an injunction restraining the erection and operation of said factory.

Defendants filed a general demurrer, general denial, and further answered specially, denying the existence of the several grounds for injunction as set out in plaintiffs' petition. The cause was heard before Hon. Charles E. Ashe, judge of the Eleventh district court of Harris county, Tex., upon an order to show cause why said injunction should not be granted, on February 10, 1920. Upon this hearing an order was made and entered by the court, granting a temporary injunction restraining defendants from the construction and operation of said ice factory.

The record discloses that the ice plant of defendants is being erected within 29 feet of the property line of plaintiffs Wood and Diese; that the residence of the plaintiff Diese is 75 feet from said ice plant, the residence of plaintiff Wood approximately 90 feet, and the residence of the plaintiff Schroeder 100 feet from said ice plant. The land on which the factory is being erected is just outside the limits of the town of Goose Creek, which contains about 5,000 inhabitants, and such ice plant is being constructed for the manufacture of ice to supply the needs of the people living in said town.

The lot on which the ice factory is situated is adjoining or near the railroad right of way between the railroad and plaintiffs' property. There is a drainage ditch between the factory and plaintiffs' property, and an improved roadway into the town of Goose Creek passes in front of the factory. There are few residences in that section of the town. The location seems to be as far from the settled residence portion of the town as any that could be obtained accessible to a public road and the railroad, and convenient for the distribution of ice to the inhabitants of the town.

Plaintiff Charles Diese, testified by affidavit:

"That he was a blacksmith by trade; that he had previously operated a boiler and a stationary engine; that his experience in such line of work had taught him that if the ice plant, which is being erected by defendants in this cause, is operated by the use of secondhand machinery, the same will create a great deal of noise, and would disturb the peace and quietude of the homes of the plaintiffs."

A. L. Smith testified for the plaintiffs:

That he lives at Goose Creek, Tex.; is 38 years of age; that he is experienced in the operation of ice plants, and has visited plants at Edna, Tex., Port Lavaca, Tex., Graham, Tex., and Dallas, Tex., and has had occasion during numerous visits to said plants to observe the operation of same; that the noise, waste water, obnoxious odors, the danger of explosion from the ammonia tanks and boilers, will in his opinion render the property of plaintiffs undesirable as residence property.

R. M. Whiteside testified for plaintiffs:

That he was an engineer by trade, and is at present operating engineer for the Humble Oil Refining Company Electric Plant at Goose Creek; that he has operated a locomotive engine for a number of years, and has operated stationary engines for at least 10 years; that he has worked and been in charge of an ice plant for about 2 years, and is thoroughly familiar with the operation of same; that he has examined the machinery of the Goose Creek Ice Company plant, and finds the same to be secondhand or used machinery, and is informed that the same has been in use since the year 1906, and is of the opinion that the operation of said plant at its present location, the escape of steam, fumes from ammonia, and the liability of the explosion of same, will materially decrease the value of said property and render the use of same as residence property undesirable.

J. D. Hunnicutt, Jr., testified for the plaintiffs:

That he knows the location of the residences of plaintiffs M. T. Wood and Charlie Diese; that the same is approximately as indicated upon the plat attached to the petition, marked "Exhibit A"; that the railroad, which operates at Goose Creek, is also indicated upon the map as north of said ice plant, and affiant understands that defendant purchased the lot upon which it is erecting its plant from Thomas Wright, said lot being about 50x100 feet in dimensions, and that Mr. Wright owns all of the land, which is open land, extending from the lot now owned by said ice plant north and east of said railroad; that affiant understands that said defendant company could have purchased and can purchase from said Wright land for its plant immediately on or much nearer said railroad than the lot which they have heretofore purchased, and that, if said ice plant was erected upon a lot further north and nearer said railroad, it would naturally be farther removed from the residences of the plaintiffs, and would not give them the annoyance which they have alleged in their petition; and that they will suffer by an erection of the plant upon its present site.

In opposition to these affidavits appellants presented the following:

S. A. Spencer, one of the originators of the ice company enterprise, testified by affidavit:

"Our building will be ironclad; i. e., corrugated iron, with a Johns-Manville asbestos fireproof roof. Our machinery will be first-class,

and will make no more noise than usual to any machinery with moving parts. Our boilers are known as return tubular, incased in steel settings, and the fuel used will be oil, and there will be no unusual noises from this source. The boilers have been inspected by the Hartford Insurance Company and pronounced in first-class condition.

"The only chemical used in the operation will be ammonia, and no surplus of ammonia is ever carried in stock, and after being placed in the system there is no possibility of escaping fumes that would endanger life or property, as the slightest leak of this chemical is readily detected, and, as it is very expensive, naturally immediate attention is given it, but where a plant is constructed properly there is very little likelihood of any leaks. Without leaks the presence of ammonia cannot be detected.

"This company proposes to dig, and in fact has now started to dig, a four-inch deep water well for furnishing the necessary water for the operation of the plant and the manufacturing into ice. This well is to be located between our building and the county drainage ditch for the purpose of giving perfect drainage to any waste water we might have. This water will be pumped by the usual style of pumps used for this purpose, operated by steam power, and will neither be noisy nor in any way detrimental to any person or property. All exhaust steam from the water well pump is condensed back into water for the use of manufacturing the ice. This manner of pumping water, and also operating the refrigerating and ice-making machinery, is used in nearly all of the modern hotels and big office buildings; these plants being installed and operated within the buildings themselves.

"Myself and associates operate two plants in Beaumont, Tex., one of them being located on Park street, one of the main arteries of the city, and on the south of us are residences within 30 feet, while on the east of us, across Park street, is a row of modern dwellings, and from none of these people have we ever had any complaint, either as to noise, odors, or any disagreeable features whatever."

F. A. Delle, agent of the company from whom appellants purchased a portion of the machinery for the plant, testified:

"The equipment sold the Goose Creek Ice Company by my company is modern and up to date equipment, and, if properly installed and operated, the noise that could be heard outside of the building would scarcely be perceptible, and, so conducted, it would not be possible to disturb people living 75 feet away and farther. As the exhaust steam from the engine is condensed and does not reach the atmosphere, there will be no noise on this account. There is nothing else about the plant that would make any noise that could be heard outside of the building at all. This machinery is slow-moving and built to be noiseless in operation.

"My business has been such that I am acquainted with the location of many such plants, and I know of a number located in thickly settled residential portions of towns and cities, where there is no complaint whatever about their operation—for instance, the Independent Ice Company, here in Houston, is located at 2002 Capital avenue; the plant of the Rio Grande Valley Ice Association is located at 2711 McKinney street, which blocks are both occupied by residences. There are several other plants in this city, more or less near residences. I have never heard any complaint about the location or operation of these plants; in fact, as far as actual disturbance, annoyance, and discomforts are concerned, these plants, as built these days, are unobjectionable.

"As to the chemicals, the only chemical used is ammonia, and it is usually not kept in stock, but is confined in coils, where it remains. Under normal operation there will be no ammonia odors outside of the plant; in fact, it can scarcely be detected inside of the plant."

C. W. Fellows, manager of the Eureka Ice Company, of Houston, testified:

"This plant makes the ice from distilled water produced from the condensed steam, and so far as I know all these plants making ice in this way are of practically the same design, and from my understanding of the character of machinery being put in at Goose Creek, by the Goose Creek Ice Company, it is of similar construction. In these plants as they are usually conducted they are not objectionable from the standpoint of noises, odors, gases, or other features attending their operation. No chemicals are used, except ammonia, and it is carried in coils and absolutely confined, there being no escape whatever, and its presence can rarely be detected, even in the building, and it is never noticeable outside.

"These plants are frequently operated without annoyance of any kind in thickly settled city sections. The Irvin Ice Company plant, in Houston, for instance, is located at Hemphill and Railroad streets, and it is surrounded on three sides by rows of residences, separated from the plant by rather narrow streets. I have never heard of any complaint about these plants anywhere in the city, and several of them are situated in residence sections; in fact, there is nothing to object to on account of their being close to a residence, in so far as noises, odors, or manner of operation is concerned, if conducted as they usually are and should be.

"The operation of a water well in connection with these plants, where the steam is condensed, is practically noiseless and cannot disturb anybody."

The defendant W. P. Moon, whose residence is within 150 feet of the site of the factory, testified:

"I have been engaged in shipping in and selling ice to the people of Goose Creek. Last summer I handled on an average of 100 tons a week, and could not meet the demands of the people. Feeling the need of a factory there, I went to work and organized the Goose Creek Ice Company, enlisting capital from the outside as well as some home capital, and taking stock also myself. The matter of selecting the location and negotiating a trade for same was left to me, and I selected the place where the plant is now being built as the most suitable and convenient, on account of it being on a

public highway, also on the county ditch, that would take care of all our surplus and waste water, and also because it was possible to have a siding put in from the railroad; the land abutting both the railroad, the highway, and the ditch.

"I have been around ice plants a good deal, and at the Crystal Ice Plant, in Beaumont, after which the proposed plant is fashioned, several times, and I know that these plants run without noise or fumes or gases, or any other disagreeable features; else I would not have selected a location so close to my home.

"I am the manager of the plant, and have full charge of the construction. There is no other person in authority there. The president of the company is Mr. S. A. Spencer, of Beaumont, Tex. I had no notice whatever of any complaint from anybody until I was served with the notice in this case of the filing of this suit. At that time all of our machinery had been ordered for a considerable time—in the first part of December—and most of the heavy machinery was there, $25,000 or $30,000 worth; the concrete foundation for the building had been laid, part of the framing was up, a great deal of the lumber and other material was on the ground, and since then more machinery and material ordered before that has come in. About 40 per cent. of the construction of the building is now completed.      •

"I state, further, that the time is very short in which this factory can be completed in time to meet the demands of the hot season. I assume that it will take, with good luck, at least until the 1st of May to put this plant in operation, if we are not interfered with at all. If we are compelled to abandon this site, even if we should procure another and go ahead, we could not be in time to furnish ice this summer.

"About the well—we are sinking a deep well, from which to get water for the use of the plant, which will be handled by a pump operated by steam, and will be attended with no noise that could affect any one's comfort or annoy them. You could not hear it farther than across the room where I am making this affidavit. It is almost noiseless."

J. G. Martin testified that he was familiar with the location of plaintiffs' property and the ice factory, and in his opinion the construction of the factory will not diminish, but increase, the value of plaintiffs' property.

C. Phillips testified:

"I have been running stationary engines for the past 20 years, as an occupation; during the years 1913, 1914, and 1915 I was assistant engineer at the Galveston Ice & Cold Storage plant at Galveston, Tex. That is a very large and modern ice plant, of the capacity of about 350 tons per day. The ice at that factory was made by distilled water. We condensed all of our steam through a condenser and vacuum pump, with a vacuum to take our steam from our engine to the condenser to make our distilled water. In this way the steam never is exposed to the atmosphere, and there is no noise from any exhaust from the engine. The only noise about the plant of this character is from what roar there is of the furnace, and this, being inclosed in the building, is not no-

ticeable outside of the building. There is no noise of any kind attending the operation of a plant of this sort that would annoy or affect anybody 75 or 100 feet away. The boiler using oil for fuel, there is no smoke or soot, if properly fired. In an ice plant properly erected, with a tight system, there would be no odor of ammonia; this being the only chemical used in the manufacture of ice. Ammonia is not carried in stock, but is only purchased as needed; it does not require any ammonia on hand, except what you have got in the system; you use it over and over again.

"I have looked over all the machinery being assembled for the construction of the Goose Creek Company's plant, and it is of modern design for making ice from distilled water, and is similar in construction to the plant spoken about at Galveston; the difference being in the capacity of the plant."

Five or six other witnesses, who were residents of Goose Creek and familiar with the location of the properties, testified for plaintiffs that in their opinion the operation of the ice plant would render the plaintiffs' property undesirable as residence property, and that the noise caused by the operation of the machinery and the escape of steam, the fumes from the plant, the waste water, and the danger of explosion would greatly interfere with the quiet and peaceable enjoyment by plaintiffs of their homes.

[1] We agree with appellant that this testimony is not sufficient to sustain the order of the trial court granting the temporary injunction.

[2] An ice factory being a lawful and useful business enterprise in any community, its construction and operation is not a nuisance per se, though by its location and the manner of its operation it might become such.

[3] To entitle appellees to an injunction restraining the construction and operation of appellant's factory, it devolved upon them to show that the operation of the factory would materially interfere with their quiet and peaceable enjoyment of their homes, and in determining the question of the sufficiency of the evidence to show plaintiffs' right to the injunction it must be borne in mind that the alleged nuisance has not yet come into existence, and plaintiffs are asking relief against an apprehension, not an actual injury. In this class of cases the general rule is thus stated in 29 Cyc. 1222:

"The general rule is that an injunction will be granted only to restrain actually existing nuisances, and not to restrain an intended act on the ground that it may become a nuisance; and although, where an act or structure will necessarily be a nuisance for which there can be no adequate remedy at law, a court of equity may interfere by injunction to prevent the threatened injury, a mere prospect of future annoyance or injury from a structure or instrumentality which is not a nuisance per se is not grounds for an injunction, and equity will

not interfere where the apprehended injury or annoyance is doubtful, uncertain, or contingent. So the erection or alteration of a building for a lawful purpose will not be restrained, where it is not shown that it will necessarily be a 'nuisance, nor will the erection of a building not in itself a nuisance be enjoined on the ground that certain uses to which it is alleged that it is to be devoted will constitute a nuisance, where it is neither alleged nor proved that the building could not be devoted to other uses which would not constitute it a nuisance. So, also, an injunction against a legitimate business will not be granted because it is feared that it may become a nuisance, for. the presumption is that it will be conducted in a proper manner; but in order to warrant an injunction it must appear that the operation of the business will necessarily be a nuisance."

In the case of Robinson v. Dale, 62 Tex. Civ. App. 277, 131 S. W. 308, in which plaintiffs sought to enjoin the erection of a cotton gin, and in which case, after a trial before a jury, a perpetual injunction was obtained, the court sustained an assignment directed at the sufficiency of the evidence to support the judgment, and, in passing upon this question, used the following language, quoting from High on Injunctions:

"Where an injunction is asked to restrain the construction of works of such a nature that it is impossible for the court to know, until they are completed and in operation, whether they will or will not constitute a nuisance, the writ will be refused in the first instance."

They also quote with approval the following language from Joyce, Law of Nuisances, paragraph 102:

"The fact that a business which is lawful may become unlawful after it has been commenced is not a sufficient ground for enjoining the same. It must clearly appear to the satisfaction of the court that it will become a nuisance. So it has been said in this connection: 'Before a court of equity will restrain a lawful work, from which merely threatened evils are apprehended, the court must be satisfied that the evils anticipated are imminent and certain to occur.'"

We think it clear the opinion of plaintiffs and their witnesses that the operation of the factory will materially interfere with plaintiffs' enjoyment of their homes is based upon the assumption that the noise from escaping steam, the fumes from the ammonia used in manufacturing the ice, and the waste water on or around the premises are necessary incidents to the operation of the factory. The testimony of defendants' witnesses, who .are experienced in matters of the proper construction and operation of ice factories, shows that an ice factory can be so constructed and operated that there will be no noise from escaping steam and no fumes, and that under the plan of construction and method of operation of this factory there will be no such noise, nor fumes of any kind, and all of

the waste water will be carried off the premises into the county drainage ditch. This testimony is uncontradicted, and if the factory is thus operated it will not become a nuisance. There will necessarily be some noise from the mere movement and vibration of the machinery, and it might be preferable on this account not to have the factory as close to one's residence·as this factory will be to the homes of plaintiffs; but this fact would not authorize a court to enjoin the construction and operation of the factory.

[4] To authorize an injunction preventing the use by the owner of his property for any lawful purpose, or in the carrying on of any lawful business, it must be shown that such use will materially injure or damage the person complaining of such use. This is especially true in regard to business enterprises in which the public are interested or derive benefit. In the case of Gilbert v. Showerman, 23 Mich. 448, in which an injunction was sought against the erection and operation of a mill near the residence of plaintiff, Judge Cooley, in discussing the question, says:

"We cannot shut our eyes to the obvious truth that, if the running of this mill can be enjoined, almost any manufactory in any of our cities can be enjoined upon similar reasons. Some resident must be incommoded or annoyed by almost any of them. In the heaviest business quarters, and among the most offensive trades of every city, will be found persons who, from motives of convenience, economy, or necessity, have taken up * * * their abode; but in the administration of equitable policy, the greater and more general interests must be regarded, rather than the inferior and special. The welfare of the community cannot be otherwise subserved and its necessities provided for. Minor inconveniences must be remedied by actions for the recovery of damages rather than by the severe process of injunction."

The record shows that before this suit was instituted, or defendants were informed that plaintiffs objected to the construction of the ice factory, a considerable sum of money had been spent by the defendants in the construction of the factory, and defendants' loss and damage, if now enjoined from the completion of the factory and its operation, will probably exceed the value of plaintiffs' property.

[5] It would, we think, in these circumstances be manifestly inequitable to enjoin the completion and operation of the plant. If, when the factory is put in operation, it proves to be a nuisance and causes plaintiffs damage, they can recover such damages of defendants. It follows from these conclusions that the order of the trial court granting the injunction should be reversed, and judgment here rendered refusing plaintiffs' application; and it has been so ordered.

Reversed and rendered.